Parker, C., J.,
delivered the opinion of the Court.
We are all satisfied that the declaration of Hunt, offered by the plaintiff, was rightly admitted. Hunt and Moot, being joint contractors, the confession of one operates upon both ; as in the case of the statute of limitations, a confession that payment has not been made; or, in the case of joint drawers or endorsers of promissory notes or bills of exchange, a confession of demand made, or notice given. It is the confession of a party.
The other statement of Hunt, made at a different time, was not legal evidence when offered by the defendant; for it was the declaration of a party in his own favor. If Hunt had been viewed in the light of a witness, it would have been competent to use subsequent declarations, to impeach prior ones. But here is a party; and it is as if the action had been tried against Hunt alone, in which case his own subsequent declaration could not be used tc impair the effect of a previous confession.
*183 The plaintiff’s having used the second declaration in another trial, cannot oblige him to receive it now as evidence. Then, he used him as a witness, and was obliged to content himself with all he was willing to swear to. Here he has his confession, which he has a right to make use of against Hunt or his partner.
The objection to Hunt’s statement, that it is the confession of a partner after the copartnership, cannot prevail. For it is the confession of facts which took place before the dissolution; and it may be doubted whether the joint interest is dissolved, until the note is paid. Bankruptcy in England is widely different from a mere inability to pay one’s debts here.
*It was suggested that the statement of Hunt might f * 228 ] have been procured improperly, by surprise or collusion. This may be objected to all confessions and all evidence. The answer is, that if facts of the kind are proved, the effect of such evidence will be destroyed.
The direction of the judge to the jury, that if the discharge of the note was fraudulent, their verdict should be for the plaintiff, we think was entirely correct. For if that was fraudulent, it left the note good and valid. There was an adequate consideration for the note; no one can doubt Hunt’s liability upon it, and if he was liable, it follows that Root was equally so. For he voluntarily engaged himself with Hunt; and, indeed, the consideration came to him as much as to Hunt; and he would have had the benefit of it, but for his confidence in Hunt.
But it is said, that if it were fraudulent, this discharge cannot be avoided, so as to set up the note ; and this would be true if Lamed were living, and endeavoring to avail himself of the note. But his creditors may do it, and the administrator, who represents the creditors, may show the fraud to avoid the receipt. Assignees of a bankrupt might do it. If this were not so, it would be easy for men to provide for their families, to the prejudice of their creditors.
Nor does it make any difference, that less than the amount of the note is wanted for the creditors, and that the surplus will go to the heirs of the intestate. This is but an incident to the right of the administrator to recover for the use of the creditors.
The fifth section of the “ act regulating the descent and distribu tian of intestate estates,” provides for the recovery of real estate fraudulently conveyed, for the benefit of creditors. This is a necessary provision, because the intestate did not die seised; but no such provision is needful for the recovery of debts due to the intestate (6).
With respect to the position, that Root is to be considered *184 as trustee, and, so, answerable only for what he has [ * 229 ] * actually received; we cannot view him in this light. He was indebted to the full amount of the note, equally with Hunt. The object of Lamed was to have the security of Root. It was only through the consent of Root that Hunt had all the property; and if Root suffers from misplaced confidence in Hunt, it is to be lamented; but not to be remedied by us.

Judgment on the verdict

 Stat. 1805, c. 90.